IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN
MADISON DIVISION

| |
|---|
| Wesley Sydow,<br><br>        Plaintiff,<br> v.<br><br>Weyerhaeuser Company, *a corporation;*<br>3M Company, *a corporation*;<br>Donaldson Company, Inc., *a corporation*;<br>Gardner Denver, Inc., *a corporation*;<br>Metropolitan Life Insurance Company*, a corporation*;<br>Owens-Illinois, Inc., *a corporation*;<br>Unknown Insurers of Owens-Illinois, Inc., *a corporation;*<br>Unknown Insurers of Roddis Plywood Corporation, *a corporation;*<br>Unknown Insurers of Weyerhaeuser Company, *a corporation;*<br><br>        Defendants. |

**COMPLAINT**

---

Plaintiff Wesley Sydow by and through his attorneys, Cascino Vaughan Law Offices, Ltd., and complains against the above defendants as follows:

**JURISDICTION AND PARTIES**

1. Plaintiff Wesley Sydow is an adult citizen and resident of Marshfield, Wisconsin.

2. Defendant Weyerhaeuser Company ("Weyerhaeuser") is the former owner of the Marshfield, Wisconsin door manufacturing plant ("Marshfield plant") where asbestos fireproofing products were manufactured and asbestos containing products were used in manufacturing production. Weyerhaeuser is legally responsible for the conduct of Roddis

Plywood Corporation, the former owner and operator of the Marshfield plant.

3. Defendant 3M Company ("3M") designed, manufactured, and sold masks for personal breathing protection in occupational settings, including without limitation the 3M 8710.

4. Defendant Donaldson Company, Inc. ("Donaldson") is responsible for the conduct of Carter Day International Inc. ("Carter Day"). Carter Day designed, manufactured, and sold dust control devices, including without limitation bag-house dust collectors.

5. Defendant Gardner Denver, Inc. ("Gardner Denver") is responsible for the conduct of Clarkson Industries, Inc. ("Clarkson"). Clarkson designed, manufactured, and sold dust control devices.

6. Defendant Metropolitan Life Insurance Company ("MetLife") conspired and acted to conceal information about the health hazards of asbestos from both individual end-users and industry.

7. Defendant Owens-Illinois, Inc. ("O-I") designed and sold licenses for a patent to manufacture of fire doors incorporating asbestos-containing cores.  O-I also manufactured, sold, and designed asbestos products, including without limitation fire door cores.  The brand name "Kaylo" was associated with both the patented doors and the cores.

8. Unknown Insurers of Owens-Illinois, Inc. are named pursuant to Wis.Stats. §803.04(2)(a) as they have an interest in the outcome adverse to the plaintiff.

9. Unknown Insurers of Roddis Plywood Corporation are named pursuant to Wis.Stats. §803.04(2)(a) as they have an interest in the outcome adverse to the plaintiff.

10. Unknown Insurers of Weyerhaeuser Company are named pursuant to Wis.Stats. §803.04(2)(a) as they have an interest in the outcome adverse to the plaintiff.

11. Jurisdiction is based on diversity of citizenship of the parties hereto under Title 28, United

States Code, §1332.

12. The amount in controversy exceeds the sum of Seventy-Five Thousand Dollars ($75,000), exclusive of interest and costs.

13. Venue is proper pursuant to Title 28, United States Code, §1391.

## GENERAL ALLEGATIONS

14. The operations at the Marshfield plant involve cutting, sawing, and trimming of asbestos containing fire doors and cleanup, and disposal of the waste and scrap from such doors. At certain times the mixing of asbestos fibers to make the cores for the fire doors was a part of the manufacturing process.

15. Plaintiff inhaled airborne asbestos fibers released during operations at the Marshfield plant as a result of the following:

    a. his employment at the Marshfield plant beginning in 1953;

    b. asbestos fibers contaminating the home, auto, lunchroom, and other locations where non-work related activities were performed;

    c. asbestos fibers released from the Marshfield plant operations which contaminated the surrounding community;

    d. transport of asbestos fibers from the Marshfield plant to other locations.

16. During the period of his exposures, plaintiff did not understand or appreciate the dangerous nature of asbestos and of the nature of the risks of asbestos.

17. As a direct and proximate result of the conduct of defendants, plaintiff suffered from the asbestos related disease malignant mesothelioma.

18. The asbestos disease process and injury began before April, 1994.

19. All exposures to asbestos that plaintiff received contributed to and caused the plaintiff's asbestos related conditions.

20. Plaintiff suffers great pain, physical impairment, and great mental pain and anguish. He is liable for large sums of money for medical and hospital care, and suffered losses to his personal property and possessions.

## **COUNT I - PRODUCT LIABILITY - NEGLIGENCE**

21. Plaintiff brings this claim for negligence and re-states and re-alleges the allegations in paragraphs 1 - 20 above.

22. Plaintiff brings this claim against O-I and unknown insurers of O-I for

    a. designing fire doors and selling a license to manufacture such doors to Weyerhaeuser, and;

    b. manufacturing and selling fire door cores to Weyerhaeuser.

23. The term "Kaylo fire doors" is used to collectively used to refer to both O-I patented doors and cores sold by O-I.

24. It was reasonably foreseeable to O-I that plaintiff and other workers working in or in proximity to Kaylo door manufacturing operations at Weyerhaeuser would inhale asbestos fibers released from the Kaylo doors during the manufacturing operations.

25. Defendant knew or in the exercise of ordinary or reasonable care ought to have known asbestos causes serious and fatal disease.

26. Plaintiff did not know that asbestos products were dangerous or harmful at the time of his exposures.

27. Defendants had a duty to exercise reasonable care for the safety of plaintiff and others who worked with or were exposed to the defendants' asbestos products.

28. Defendant breached its duty of care and was negligent, including without limitation in one or more of the following acts or omissions:

    a. Failed to adequately warn plaintiff or others of the health hazards of asbestos

        associated with Kaylo doors;

    b.    Failed to investigate or test for the health effects of asbestos in Kaylo doors;

    c.    Failed to instruct plaintiff, his employers, or others in the use of precautionary measures relating to airborne asbestos fibers released during production of Kaylo fire doors;

    d.    Defectively designed the Kaylo doors to incorporate asbestos as an ingredient or material in their manufacture when substitute materials were available.

29. As a direct and proximate result of the acts and omissions of the defendants above, the plaintiff was injured as described above.

## COUNT II – PRODUCT LIABILITY (UNREASONABLY DANGEROUS PRODUCT)

30. Plaintiff brings this claim for strict product liability and restates and realleges the allegations in paragraphs 1 – 29 above.

31. This claim is asserted against O-I.

32. Defendant was in the business of selling Kaylo fire doors (including both patent rights and manufactured cores) and other asbestos containing products.

33. Defendant placed the Kaylo fire doors into the stream of commerce with the expectation that they would reach plaintiff and other users and consumers without substantial change in the condition or design they were in when they left the possession or control of defendants.

34. Plaintiff was exposed to the defendants' Kaylo fire doors in the conditions in which they left the possession or control of such defendants.

35. Defendants' asbestos products were defective and unreasonably dangerous at the time they left the possession or control of defendants in one or more of the following ways:

    a.    Failed to adequately warn plaintiff or others of the health hazards of asbestos associated with Kaylo doors;

    b.    Failed to investigate or test for the health effects of asbestos in Kaylo doors;

    c.    Failed to instruct plaintiff, his employers, or others in the use of precautionary measures relating to airborne asbestos fibers released during production of Kaylo fire doors;

    d.    Defectively designed the Kaylo doors to incorporate asbestos as an ingredient or material in their manufacture when substitute materials were available.

36. As a direct and proximate result of the acts and omissions of the defendants above, the plaintiff was injured as described above.

## COUNT III – NEGLIGENCE

37. Plaintiff brings this count for negligence against defendant Weyerhaeuser Company.

38. Plaintiff restates and re-alleges the general allegations in lines 1 - 36 above.

39. Weyerhaeuser, during operations to manufacture fire doors at the Marshfield plant beginning in the 1950s, caused asbestos fibers to be released and contaminate the air in various settings in which no work related activities were being conducted or the plaintiff was not engaged in work related activities, including without limitation:

    a.    the community surrounding the plant;

    b.    home and vehicle;

    c.    landfills; and

    d.    lunchroom.

40. The inhalation of asbestos fibers from contaminated air in the community surrounding the plant, housing, vehicles, lunchroom, and other places frequented by plaintiff is unrelated to plaintiff's employment relationship or activities with Weyerhaeuser.

41. It was reasonably foreseeable that plaintiff and other persons would be in proximity to and inhale asbestos fibers released into the community and other areas contaminated by the Weyerhaeuser Marshfield operations.

42. Weyerhaeuser Company had a duty to exercise reasonable care for the safety of plaintiff

from asbestos fibers released during Weyerhaeuser's operations of the Marshfield plant which would foreseeably contaminate the community and other areas.

43. Weyerhaeuser knew or in the exercise of ordinary or reasonable care ought to have known asbestos causes disease and/or death.

44. Plaintiff did not know that asbestos or asbestos products were so dangerous or harmful at the time of his exposures.

45. Weyerhaeuser breached its duty of care and was negligent, including without limitation in one or more of the following acts or omissions:

   a. Failed to adequately warn plaintiff or others of the health hazards of asbestos;

   b. Failed to adequately investigate health effects of asbestos;

   c. Failed to adequately test for air levels of asbestos;

   d. Failed to adequately instruct plaintiff or others in the use of precautionary measures relating to airborne asbestos fibers;

   e. Used defectively designed asbestos-containing products when substitutes were available;

   f. Failed to use proper engineering techniques or methods, or used unsafe techniques or methods, in handling, processing, removal, and disposal of asbestos-containing materials.

   g. Violated agency regulations issued pursuant to the United States Occupational Safety and Health Act, 29 U.S.C. §651, et seq.

   h. Violated other agency regulations, including without limitation the United States Environmental Protection Agency National Emission Standards for Hazardous Air Pollutants, adopted originally as Part 61, Chapter 1, Title 40 of the Code of Federal Regulations effective on April 6, 1971.

   i. Violated regulations issued by the Wisconsin Industrial Commission, including without limitation General Orders on Dusts, Fumes, Vapors and Gases, Order 2002; And Wis. Adm. Code Ind 12.20;

   j. Exceeded other air quality standards or guidelines, including without limitation the Wisconsin Division of Natural Resources and Threshold Limit Values of the American Conference of Governmental Industrial Hygienists; and

      k.      Failed to take corrective action after being put on notice of the above violations.

46.    As a direct and proximate result of the acts and omissions of the premises defendant above, the plaintiff was injured as described above.

### COUNT IV – NUISANCE

47.    Plaintiff incorporates by reference all general allegations above and brings this count against defendant Weyerhaeuser.

48.    Weyerhaeuser is responsible for the ownership and operation of the door manufacturing plant in Marshfield, Wisconsin during the period of plaintiff's exposures.

49.    Weyerhaeuser, during operations of its Marshfield plant, caused asbestos fibers to be released into and contaminate the public air in, at, and around the plant.

50.    Weyerhaeuser Company, during operations of the Marshfield plant beginning in the 1950s, caused asbestos fibers to be released into the public air in other areas more distant from the plant by plant emissions and transport through various means, including without limitation contaminated worker clothing and vehicles hauling asbestos waste materials.

51.    Breathing uncontaminated public air is a public right.

52.    The plant emissions and transport of asbestos fibers as described above caused contamination of the community, housing, vehicles, lunchroom and other places frequented by plaintiff which contained public air.

53.    Plaintiff and others inhaled the contaminated public air.

54.    The inhalation of asbestos fibers from contaminated public air is unrelated to any employment relationship or duties with defendant.

55.    The inhalation of asbestos fibers is a health hazard.

56.    The release of asbestos fibers into the public air interfered with and endangered the use of public places, the right to breath the public air, the use of residences and vehicles, and other

activities of the entire community in one or more of the following ways:

    a.    Violated agency regulations issued pursuant to the United States Occupational Safety and Health Act, 29 U.S.C. §651, et seq. as set forth in citations issued by OSHA dated December 18, 1973;

    b.    Violated other agency regulations, including without limitation the United States Environmental Protection Agency National Emission Standards for Hazardous Air Pollutants, adopted originally as Part 61, Chapter 1, Title 40 of the Code of Federal Regulations effective on April 6, 1971;

    c.    Violated regulations issued by the Wisconsin Industrial Commission, including without limitation General Orders on Dusts, Fumes, Vapors and Gases, Order 2002; and Wis. Adm. Code Ind 12.20;

    d.    Exceeded other air quality standards or guidelines, including without limitation the Wisconsin Division of Natural Resources and Threshold Limit Values of the American Conference of Governmental Industrial Hygienists;

    e.    Adversely affected the health interests of the community at large; and

    f.    Interfered with the public health and safety;

57. As a direct and proximate result of the nuisance, the plaintiff was injured as described above.

## COUNT V – PRODUCTS LIABILITY – STRICT LIABILITY

58. Plaintiff brings this claim for strict liability against defendants Donaldson and Gardner Denver.

59. Plaintiff restates and re-alleges the allegations set forth in lines 1-57 above.

60. Defendants were at all relevant times in the business of selling dust control devices.

61. Defendants placed their dust control devices into the stream of commerce with the expectation that they would reach plaintiff and other users and consumers without substantial change in the condition they were in when they left the possession or control of defendants.

62. Defendants designed, manufactured, and/or sold dust control devices that malfunctioned or otherwise failed to adequately control dust, exposing plaintiff to asbestos dust at the Marshfield plant and in the surrounding environment.

63. Defendants' dust control devices were defective and unreasonably dangerous at the time they left the possession or control of defendants in one or more of the following ways:

    a. Failed to adequately warn plaintiff or others of the health hazards of asbestos which existed during operation of the dust control devices;

    b. Failed to investigate or test for the effectiveness of the dust control devices for preventing exposure to asbestos fibers;

    c. Failed to instruct plaintiff, his employers, or others in the use of precautionary measures relating to airborne asbestos fibers released during the operation of the dust control devices;

    d. Defectively designed the dust control devices such that they did not adequately protect against or prevent exposure to asbestos fibers;

64. As a direct and proximate result of the acts and omissions of the defendants above, the plaintiff was injured as described above.

## COUNT VI – PRODUCTS LIABILITY – NEGLIGENCE

65. Plaintiff brings this cause of action for negligence against defendants Donaldson and Gardner Denver.

66. Plaintiff restates and re-alleges the allegations set forth in lines 1-64 above.

67. It was reasonably foreseeable that defendants' dust control devices would be used to control asbestos-containing dust.

68. Defendants knew the dust control devices were being used for control of emissions during removal and disposal of asbestos containing materials.

69. Defendants represented or held out the dust control devices to be effective in the control of

emissions during removal and disposal of asbestos containing materials generated during the type of operations at the Marshfield plant.

70. The dust control devices did not properly control the release of asbestos fibers during the removal and disposal of asbestos containing material at the Marshfield facility.

71. Defendants had a duty to exercise reasonable care for the safety of plaintiff and others when defendants' dust control devices were used to protect against emissions during removal disposal of asbestos containing waste materials.

72. Defendants knew or in the exercise of ordinary or reasonable care ought to have known asbestos causes disease and/or death and that the dust control devices were not effective in the control of emissions during removal and disposal of asbestos containing materials generated during the type of operations at the Marshfield plant.

73. Each defendant breached its duty of care and was negligent, including without limitation in one or more of the following acts or omissions:

   a. Failed to adequately warn plaintiff or others of the health hazards of asbestos which existed during operation of the dust control devices;

   b. Failed to investigate or test for the effectiveness of the dust control devices for preventing exposure to asbestos fibers;

   c. Failed to instruct plaintiff, his employers, or others in the use of precautionary measures relating to airborne asbestos fibers released during the operation of the dust control devices;

   d. Defectively designed the dust control devices such that they did not adequately protect against or prevent exposure to asbestos fibers.

74. As a direct and proximate result of the acts and omissions of the defendants above, the plaintiff was injured as described above.

## COUNT VII – PRODUCTS LIABILITY – STRICT LIABILITY

75. Plaintiff brings this claim for strict liability against defendant 3M.

76. Plaintiff restates and re-alleges the allegations set forth in lines 1-74 above.

77. Defendant was at all relevant times in the business of selling personal protective equipment, including without limitation masks.

78. Defendants knew and expected the masks would be used to protect against the inhalation of asbestos fibers.

79. Defendant placed its masks into the stream of commerce with the expectation that they would reach plaintiff and other users and consumers without substantial change in the condition they were in when they left the possession or control of defendants.

80. Defendant's masks reached plaintiff without substantial or unforeseeable change in the condition in which it was sold.

81. Plaintiff used defendant's masks in the condition in which they left the possession or control of such defendants.

82. Defendant's masks was defective and unreasonably dangerous at the time it left the possession or control of defendants in one or more of the following ways:

    a. Failed to adequately warn plaintiff or others of the health hazards of asbestos which existed when wearing defendant's masks;

    b. Failed to investigate or test for the effectiveness of the masks in preventing the inhalation of asbestos fibers;

    c. Failed to instruct plaintiff, his employers, or others about the inadequacies of using the masks as precautionary measures against airborne asbestos fibers;

    d. Defectively designed such that the masks did not adequately protect against or prevent exposure to asbestos fibers;

    a. Failed to specify or instruct in the proper use of the masks.

83. As a direct and proximate result of the acts and omissions of the defendants above, the plaintiff was injured as described above.

## COUNT VIII – PRODUCTS LIABILITY – NEGLIGENCE

85. Plaintiff brings this claim for negligence against defendant 3M.

86. Plaintiff restates and re-alleges the allegations set forth in lines 1-83 above.

87. It was reasonably foreseeable that defendant's personal protective masks would be used to prevent exposure to asbestos.

88. Defendants knew and expected the masks would be used to protect against the inhalation of asbestos fibers.

89. Defendants represented or held out the masks to be adequate in the protection against inhalation of asbestos fibers during the type of operations at the Marshfield plant.

90. The masks did not properly protect against inhalation of asbestos fibers from the operations at the Marshfield facility.

91. Defendant had a duty to exercise reasonable care for the safety of plaintiff and others who used defendants' personal protective equipment to protect against exposure to asbestos fibers.

92. Defendant knew or in the exercise of ordinary or reasonable care ought to have known asbestos causes disease and/or death.

93. Defendant breached its duty of care and was negligent, including without limitation in one or more of the following acts or omissions:

   a. Failed to adequately warn plaintiff or others of the health hazards of asbestos which existed when wearing defendant's masks;

   b. Failed to investigate or test for the effectiveness of the masks preventing the inhalation of asbestos fibers;

   c. Failed to instruct plaintiff, his employers, or others about the inadequacies of using the masks as precautionary measures against airborne asbestos fibers;

      d.      Defectively designed its personal protective equipment such that it did not adequately protect against or prevent exposure to asbestos fibers;

      a.      Failed to specify or instruct in the proper use of the masks.

93. As a direct and proximate result of the acts and omissions of the defendants above, the plaintiff was injured as described above.

## COUNT IX – CIVIL CONSPIRACY

94. Plaintiff brings this cause of action for civil conspiracy against defendant Metropolitan Life Insurance Company.

95. Plaintiff restates and re-alleges the allegations set forth in lines 1 – 93 above.

96. Defendant Metropolitan Life and other unnamed co-conspirators knowingly and willfully combined, agreed, and conspired with each other for the purpose of accomplishing one or more of the following unlawful purposes:

      a.      Suppressing information about the health hazards of asbestos, including medical and scientific data, from those persons who would be exposed to the asbestos from the products made and sold by the conspirators,

      b.      Affirmatively asserting, in a manner not warranted by the information possessed by the conspirators, claims that the conspirators knew were false, namely, that it was safe to work with and in close proximity to asbestos.

97. One or more of the conspirators, including Metropolitan Life, performed the following tortious acts in furtherance of the conspiracy:

      a.      Failed to warn about health hazards of asbestos; failed to investigate health hazards of asbestos;

      b.      interfered with scientific and medical studies about the health hazards of asbestos; or

      c.      failed to instruct about precautionary measures required for protection.

98. As a direct and proximate result of the acts of the conspiracy described above, the plaintiff

was injured as described above.

## COUNT X – PUNITIVE DAMAGES

99. Defendants acted maliciously, with intentional disregard for the rights of plaintiff for which plaintiff is entitled to recover punitive damages.

## COUNT XI - DECLORATORY JUDGMENT – UNCONSTITUTIONAL

100. In 1995 Wisconsin enacted Act 17 which created restrictions on recoveries by victims of personal injuries.

101. In 2011 Wisconsin enacted Act 2 which created restrictions on recoveries by victims of personal injuries.

102. Plaintiff seeks a declaration that retroactive application of 2005 Act 155 and 2011 Act 2 to limit the recovery in this case is unconstitutional.

## PRAYER FOR RELIEF

Plaintiff prays for relief as follows:

   a. Judgment against defendants, jointly and severally, for compensatory and general damages.

   b. Punitive damages in an amount to be determined against each defendant.

   c. A declaration that 1995 Act 17 and 2011 Act 2 are unconstitutional as applied to this case.

   d. Such further legal and equitable relief as the court orders to do justice in this case, including without limitation award of costs and disbursements of this action.

## JURY TRIAL DEMAND

Plaintiff hereby demands a trial by a jury.

Dated: March 21, 2014

/s/ Michael P. Cascino

Michael P. Cascino
Robert G. McCoy
Attorney for plaintiff
Cascino Vaughan Law Offices, Ltd.
220 S. Ashland Avenue
Chicago, Illinois 60607
Phone: 312.944.0600
Fax: 312.944.1870
Email1: ecf.cvlo@gmail.com
Email2: mcascino@cvlo.com
Email3: bmccoy@cvlo.com

# Exhibit A

Defendants' States of Incorporation and Principal Places of Business

| Defendant | State of Incorporation | State of Principal Business |
|---|---|---|
| 3M Company | Delaware | Minnesota |
| Donaldson Company, Inc. | Delaware | Minnesota |
| Gardner Denver, Inc. | Delaware | Pennsylvania |
| Metropolitan Life Insurance Company | Delaware | New York |
| Owens-Illinois Inc. | Delaware | Ohio |
| Weyerhaeuser Company | Washington | Washington |