# CASCINO VAUGHAN LAW OFFICES, LTD

MICHAEL P. CASCINO (IL)
ALLEN D. VAUGHAN (IL)
ROBERT G. McCOY (WI, IL)
JIN-HO CHUNG (IL)
JAMES N. HOEY (IL)
TED D. HARTMAN (IL)

220 SOUTH ASHLAND
CHICAGO, ILLINOIS
60607-5308
312-944-0600
312-944-1870 FAX
www.cvlo.com

OF COUNSEL
MICHAEL A. POLLACK (WI)

June 4, 2014

Magistrate Judge Stephen L. Crocker
United States District Court, Western District of Wisconsin
120 N. Henry Street, Room 320
Madison, WI 53703

      Re:    Marshfield Plant Cases
              *Boyer v. Weyerhaeuser Co., et al.* (14-cv-286)
              *Masephol v. 3M Co., et al.* (14-cv-186)
              *Pecher v. Weyerhaeuser Co., et al.* (14-cv-147)
              *Prust v. Weyerhaeuser Co., et al.* (14-cv-143)
              *Seehafer v. Weyerhaeuser Co., et al.* (14-cv-161)
              *Sydow v. Weyerhaeuser Co., et al.* (14-cv-219)

Dear Magistrate Judge Crocker:

Pursuant to the text only order entered in the *Sydow* and *Masephol* cases on May 29, 2014, plaintiffs' counsel write to inform the court about the cases arising from the Marshfield, WI, door plant operations[1]. The term "Marshfield plant" refers to the door manufacturing facility operated by Roddis, acquired by merger with Weyerhaeuser in 1960, and sold in 2000 to non-party Marshfield Door Systems.

      The three decade history of asbestos litigation at the Marshfield plant begins at least as early as 1984 when a worker compensation claim was filed against Weyerhaeuser and a hearing on the merits ensued. CVLO has represented mesothelioma victims in Wisconsin state court cases filed in 1995 and 2001 arising out of Marshfield plant operations[2]. The same Weyerhaeuser corporate industrial hygienist who developed the formulas for the asbestos doors

---

    [1] Plaintiff counsel historically filed asbestos cases in the WDWI which were transferred to the MDL-875. The practice of transferring cases filed by Cascino Vaughan Law Offices to MDL-875 was terminated in 2014 by order of the Judicial Panel on Multi-District Litigation. This letter relates only to cases from the Marshfield plant and not other asbestos cases that may be filed by CVLO in the WDWI.

    [2] Owens-Illinois and counsel representing Weyerhaeuser were and are involved with multiple lawsuits arising out of a similar fire door manufacturing operation in Algoma, Wisconsin. The first tort system case from Algoma was filed in 1986 and more than 20 cases have been filed since.

made at the Marshfield plant beginning in the mid 1960s continues to serve as an expert witness for Weyerhaeuser in Marshfield plant cases. Counsel for all the principal defendants have been involved in thousands of asbestos cases. The use of asbestos as an ingredient in cores used to make fire doors, which required extensive cutting and sawing, for at least 20 years at the Marshfield plant is not disputed.

1. Counsel anticipates 3 to 9 new mesothelioma or lung cancer cases per year to be filed in the WDWI. Nonmalignant death cases also occur, but are unlikely to be more than one per year.

2. The time line for "sequencing" includes:
    a. Expedited trials for living victims
    b. Preserving testimony for trial of living mesothelioma or lung cancer victims
    c. Preserving testimony for trial of elderly (over age 70) coworker witnesses.

3. The general similarities and differences of the cases are

    a. Common allegations of in plant, community, and take home exposures due to operations at the Marshfield plant in the time frame (beginning about 1954 and continuing into the 1980s) when asbestos containing fire doors were manufactured at the plant. Community exposures from asbestos emitted from a common source were documented in published scientific literature since 1960 or earlier. Take home exposures are documented in a 1991 summary of previous literature published by the U.S. National Institute of Occupational Safety and Health.

    b. Identity of defendants in most cases to include without limitation Weyerhaeuser, Owens-Illinois, and 3M. In some cases where the victim did not have exposures until later years (mid-1970s), Owens-Illinois may not be a defendant.

    c. Common defenses and dispositive motions against legal claims based on community/take home exposures (Weyerhaeuser) and licensing of patents (Owens-Illinois).

    d. Common lay witness, documentary, and expert evidence on plant practices relating to in plant, community, and take home exposures. The differences in each case are limited to 5-10% of the evidence which spells out unique in plant, community, and home activities of the victims.

    e. Medical evidence is 85-90% similar for a particular disease such as mesothelioma or lung cancer due to asbestos. The common evidence involves the diagnosis and causation related to asbestos. The differences in medical evidence, which are about 10-15% of the evidence in individual cases, are primarily the history of each individual as to other health conditions, pain and suffering, and amount of exposures for causation.

    f. Expert witnesses are usually identical for each case, with about 10-15% or less of any report or testimony being unique to each case.

      g.      Motions in limine about evidence are typically 90 - 95% overlapping from case to case.

Processing Efficiencies

The court should adopt processing efficiencies commensurate with the 30 year history of asbestos litigation at the Marshfield plant, similarities between the cases, and experience of asbestos case counsel. The court can follow practices of other jurisdictions which have adopted procedures for asbestos dockets assigned to a single judge or a select group of judges. This includes the following:

4. Coordinated exchange among the parties of past discovery in the form of document productions and testimony that can be used for all cases, subject to rulings on admissibility.

5. Master discovery responses to standard requests, including Rule 26 disclosures, which can be incorporated by reference into all cases. Case specific discovery is still permitted.

6. Consolidated discovery procedures for oral and written testimony to avoid the need for repetitive service or filing in all Marshfield plant cases.

7. Expedited procedures for preservation of testimony of living mesothelioma victims based on the short and unpredictable life expectancy from the incurable cancer. These procedures in other jurisdictions permit the taking of the trial preservation testimony within about 10 to 21 days of the service of medical diagnosis and answers to standard interrogatories.

8. Consolidated or master expert reports which can be utilized in all cases. Expert reports and discovery in each case would focus on case specific matters.

9. Consolidation of common pretrial motions for a single ruling on matters such as dispositive legal issues, discovery, in limine motions, and other evidentiary matters, which will govern pending and future cases.

10. Consolidated trials on key issues and for multiple cases with overlapping witnesses and documentary evidence.

Plaintiffs' counsel offers the above statements in an advisory context. Significant variances are unlikely, but may exist depending on a particular case. These statements should not be construed as admissions of counsel or the position of a particular litigant.

Respectfully,

/s/ Robert G. McCoy

3

Robert G. McCoy

cc: All Counsel of Record