IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| Wesley Sydow and Theresa Sydow, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | Case No. 14-cv-219-wmc |
| v. ) | |
| ) | |
| Weyerhaeuser Company, et al., ) | |
| ) | |
| Defendants. ) | |

**PLAINTIFF'S RESPONSE TO OWENS-ILLINOIS, INC.'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff opposes in part Owens-Illinois, Inc.'s ("OI") motion for summary judgment.

Plaintiff and OI have entered into a stipulation to dismiss OI from the *Sydow* case with prejudice on patent licensor claims as a partial resolution to OI's motion for summary judgment which has been filed with the Court. The remaining claims as to the manufacture and sale of Kaylo fire door cores are the subject of this response.

As to these remaining claims, there is a genuine issue of material fact as to whether Sydow was exposed to OI products, which is discussed below.

I.   ALLEGATIONS OF COMPLAINT

Plaintiff alleges claims for negligence and strict products liability against OI based on exposure to OI Kaylo fire door core products. (Ex.1 at Count I ¶¶ 50-68; Count 2 ¶¶ 69-79.)

II.   EVIDENCE

*Kaylo Manufactured by OI*

1

Richard Luther, foreman of the Marshfield plant shipping department, declared that semi truckloads of Kaylo door cores manufactured by OI were used at the plant beginning in 1955 or 1956. (Ex.3 at ¶¶ 3-5.) Alice Sebastian, who worked in the Roddis/Weyerhaeuser fire door production area starting in 1957, declared that the fire door cores were always called "Kaylo." (Ex.19 at ¶¶ 3-6.)

OI was the exclusive manufacture of the brand name Kaylo door cores, which contained asbestos, until selling the Kaylo manufacturing business in April, 1958 to Owens-Corning Fiberglas Corporation ("OCF"). (Def.'s SPFF at ¶¶ 5-7.) The sale included: "raw materials for the production of Products, Products in process of manufacture, finished Products in warehouse, and the manufacturing supplies and repair parts at the Kaylo plant". (Ex.4 at ¶ 2). The cost of these raw materials, goods in process, and finished products was $633,661.41. (Ex.4 at ¶ 2). In 1953, OCF agreed to act as the primary Kaylo distributor and purchase $3,400,000 of Kaylo annually. (Ex.5.) OI admits that some documents regarding invoices of Kaylo sales were transferred to Owens Corning Fiberglass and therefore the records are incomplete. (Ex.16 at 2-3).

*Work Exposures*

The door core mill where cores were assembled into the doors was located on the first floor of the Roddis/Weyerhaeuser Marshfield door plant. (Doc # 151 at 8-11.) Dust from sawing, grooving, and sanding operations performed on the Kaylo cores was described as looking like "it was snowing inside the building" and spread throughout the door core mill. (Doc # 151 at 8-11.) Airborne concentrations in the Roddis/Weyerhaeuser workplace exceeded allowable industry exposure limits at the fire door plant between World War II and the 1970's

because "engineering controls [dust collection system] were either not in place or not designed to prevent escape of micron sized particles." (Ex.9 at 33-34.)

Wesley Sydow's ("Sydow") positions at Roddis/Weyerhaeuser from 1955 to 1968 were 1) inspection department, 2) assistant chief inspector and 3) quality control manager. (Ex.7 at 1-3.) Sydow's jobs from 1955 to 1968 all put him on the first floor of the door plant every day. (Ex.7 at 1-3; Doc # 168 at 50, 52-53.) Sydow did not wear a mask at Roddis/Weyerhaeuser prior to the late 60's or early 70's. (Doc # 168 at 76.)


*OI Knowledge of Dangers*

By the 1940s, OI had knowledge of the dangers of asbestos and its Kaylo products based on the studies it commissioned by the Saranac Laboratory. (Ex.14.)

Despite testing on OI Kaylo in the 1940s which found Kaylo "must be regarded as a potentially hazardous material", OI continued to market Kaylo as "non-toxic" and did not provide any warnings concerning the health hazards. (Ex.10; Ex.11; Ex.12).

Wisconsin Industrial Commission regulations adopted in 1947 relating to asbestos in places of employment were not intended to protect against the development of cancers which can occur at much lower levels of exposure than what was in the early regulations for asbestos. (Ex.13 at ¶¶ 111, 112, 113, 101-120.)


    III.    LEGAL STANDARD

"Summary judgment is appropriate if the evidence demonstrates that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Harris v. Warrick County Sheriff's Dep't*, 666 F.3d 444, 447 (7th Cir. 2012). Summary judgment is

reviewed by "construing the record in the light most favorable to the nonmovant and drawing all reasonable inferences in his favor." *Simpson v. Beaver Dam Cmty. Hosps.*, Inc., 2015 U.S. App. LEXIS 3830, 11 (7th Cir. Mar. 11, 2015). "A genuine dispute of material fact exists only when the evidence could support a reasonable jury's verdict for the non-moving party." *Crawford v. Countrywide Home Loans, Inc.*, 647 F.3d 642, 650 (7th Cir. 2011).

IV.     ARGUMENT

A. Exposure to OI Kaylo cores

Construing the evidence most favorably to plaintiff, two sources of exposure to asbestos for which OI is responsible exist. The sources are 1) Kaylo manufactured by OI and 2) the process to make doors sold by OI to Weyerhaeuser which was used until 1969.

1. Legal Standard

The Wisconsin case law standard for proving exposure at the summary judgement stage was analyzed and stated by Judge Eduardo Robreno, the supervising judge in the asbestos MDL-875 Court in *Pleaugh v. A.W. Chesterton Co.*, 2012 U.S. Dist. LEXIS 88594, *2-9 (E.D. Pa. Apr. 26, 2012). Plaintiff adopts that analysis for the purposes of this brief. Judge Robreno held:

> Wisconsin applies the "substantial factor" test in deciding whether a defendant's negligence was a cause of a plaintiff's harm. The issue of causation is one for the jury. In order for defendant's negligence to be a cause of plaintiff's injury, such that defendant could be held liable for the injury, his negligence must have been "a substantial factor in producing the injury." *Horak v. Building Servs. Indus. Sales Co.*, 2008 WI App 56, 309 Wis.2d 188, 750 N.W.2d 512, 517 (Wis. Ct. App. 2008) (quoting *Jones v. Dane County*, 195 Wis.2d 892, 537 N.W.2d 74, 84 (Wis. Ct. App. 1995)). In Wisconsin, "[t]he cause of an accident is not determined by its most immediate factor;" rather, "there may be several substantial factors contributing to the same result." *Sampson v. Laskin*, 66 Wis.2d 318, 224 N.W.2d 594, 597-98 (Wis. 1975).

"A mere possibility" of causation is not sufficient, and "when the matter remains one of pure speculation or conjecture or the probabilities are at best evenly balanced," then summary judgment must be granted for defendant. *Zielinski v. A.P. Green Indus., Inc.*, 2003 WI App 85, 263 Wis.2d 294, 661 N.W.2d 491, 497 (Wis. Ct. App. 2003) (quoting *Merco Distrib. Corp. v. Commercial Police Alarm Co.*, 84 Wis.2d 455, 267 N.W.2d 652, 655 (Wis. 1978)). When there is "no credible evidence upon which the trier of fact can base a reasoned choice between ... two possible inferences, any finding of causation" would be impermissibly based on speculation and conjecture. *Merco*, 267 N.W.2d at 655.

It follows that, as for product identification in the asbestos context, a defendant must be granted summary judgment when plaintiff's exposure to defendant's asbestos-containing products was a "mere possibility." *Zielinski*, 661 N.W.2d at 497. However, summary judgment must be denied when plaintiffs have presented "credible evidence from which a reasonable person could infer that [plaintiff] was exposed to [defendant's] products." *Id.*

Wisconsin courts have denied summary judgment when the record has established the following: plaintiff did the "type of work" that used asbestos; plaintiff's employer bought or "probably bought" asbestos from defendant; and a reasonable jury could infer that plaintiff therefore used asbestos in his work. *See Horak v. Building Servs. Indus. Sales Co.*, 2008 WI App 56, 309 Wis.2d 188, 750 N.W.2d 512, 516 (Wis. Ct. App. 2006) (citing *Zielinski*, 661 N.W.2d at 497-98); *see also Lee v. John Crane*, Inc., 2003 U.S. Dist. LEXIS 26647, 2003 WL 23218095 at *2 (W.D. Wis. 2003) (citing *Lockwood v. AC & S, Inc.*, 44 Wash. App. 330, 722 P.2d 826 (Wash. Ct. App. 1986) (requiring plaintiff to prove only that asbestos-containing product of defendant's was used at job site simultaneously with his employment)).

In *Zielinski*, the Court of Appeals of Wisconsin reversed the lower court's grant of summary judgment for defendant. 661 N.W.2d at 493-94. The court found that issues of material fact existed with respect to the following issues: 1) whether defendant sold or supplied asbestos-containing products to decedent's employer; and 2) whether decedent was exposed to asbestos-containing products supplied by defendant while he worked for employer. *Id.* Regarding the first issue, plaintiff presented the testimony of one of decedent's co-workers, as well as the testimony of an expert, an engineer. Both witnesses referred to approved vendor lists that had come from the employer, which indicated that defendant's asbestos-containing product was purchased by the employer. *Id.* at 494-496. Regarding the second issue, the court considered the "totality of the circumstances surrounding the work of masons at [the employer] and the products they generally used." *Id.* at 497. Decedent was a mason, and the testimony of his co-worker (also a mason) that both men performed refractory work on furnaces was enough to raise an issue of fact as to whether decedent was exposed to defendant's asbestos-containing product and whether it was a substantial factor in causing his injury. *Id.* at 497-498.

5

> In *Horak*, the Court of Appeals of Wisconsin reversed the lower court's grant of summary judgment for defendant, when there was evidence in the form of sales records that defendant had supplied asbestos material to plaintiff's employer. 750 N.W.2d at 513. Although defendant was not the employer's "main supplier" of asbestos materials, the sales records indicated that defendant supplied thousands of pounds of asbestos insulation materials to the employer during the time when plaintiff was employed there. *Id.* at 514. Moreover, even though plaintiff did not testify in this case, his co-worker testified that the employer had only-three or four employees, and that plaintiff's job duties included installing asbestos installation, which released dust into the air. *Id.* That the employer purchased asbestos from defendant created a reasonable inference that the employer used defendant's asbestos. Also, the small size of the company created a reasonable inference that plaintiff used at least some of defendant's asbestos. *Id.* at 516-17. Therefore, summary judgment was denied and the question of whether defendant's asbestos was a cause of plaintiff's cancer became one for the jury. *Id.* at 517.
> In sum, Wisconsin courts have found that when plaintiffs have presented "credible evidence from which a reasonable person could infer that [plaintiff] was exposed to" defendant's asbestos-containing products, then summary judgment must be denied, and the question of causation must be given to a jury.

*Pleaugh*, 2012 U.S. Dist. LEXIS 88594, at *2-9.

2. Kaylo Manufactured by OI

The Wisconsin standard for proving exposure is satisfied here. As in *Zileinski*, OI Kaylo was one of several brands of fire door cores used for at least 3 years during the employment of Sydow. Kaylo was also used in the work area where Sydow worked.

OI is also responsible for the unsold Kaylo inventory and Kaylo produced from the raw materials sold to the new owner. Based on this information, it can be inferred that the $633,661.41 inventory in 1958 was at least a six month supply, since some of the inventory was raw materials and materials in process that were not yet part of a finished product. Thus the inventory sold by OI would extend its responsibility for Kaylo products or materials an additional 6 months or longer after the business was sold at the end of April 1958.

OI contends that documentation of doors made by other companies (Armour research Foundation, Johns-Mansville, Owens-Corning Fiberglas, and Weyerhaeuser) establishes that there is no issue of material fact about the use of OI Kaylo.  The declaration of the former foreman of the shipping department of the Roddis/Weyerhasuser Marshfield plant states semi truckloads of bundled fire door cores wrapped in plactic marked as Owens-Illinois and Kaylo were received in the shipping department starting in 1955 or 1956. This evidence establishes a disputed material fact as to the use of OI Kaylo.  Other testimony establishes the doors were called "Kaylo" in 1957, if not earlier.

OI argues plaintiff has no invoices or other records to show purchases of Kaylo before OI sold the business.  The absence of such documents to prove purchase of product 60 years ago is not surprising.  OI admits most of OI's sales records of Kaylo are destroyed or otherwise unavailable.[1]  (Def.'s SPFF at ¶ 8.)  Weyerhaeuser has not provided any documents to show product purchase for the Roddis period.  Unless a party can establish all records are maintained, no inference can be drawn from the absence of documents.  Fed R Evid 803(7).  Here, the records are incomplete and statements of witnesses dispute OI's assertion that OI Kaylo was not purchased at Marshfield.

B. Community Exposure

Plaintiff's claims specific to OI are in section are Count I (product liability – negligence) and Count II (product liability - unreasonably dangerous product).  (Ex.1 at ¶¶ 50-79.)  Plaintiff made no allegations of community exposure as to OI and therefore does not respond to OI's argument concerning community exposure as it is moot.

---

[1] The available invoices of Kaylo sales come from the files of Owens Corning Fiberglas which bought the Kaylo manufacturing business from OI in April 1958.  OI admits that some documents were transferred to Owens Corning Fiberglas and therefore the records are incomplete.  (Ex.16 at 2-3).

C. Sophisticated User

Under Wisconsin negligence law, a manufacturer has a duty to warn concerning dangers about which the manufacturer knows or should know. Wis. J.I.-Civil 3242; *Mohr v. St. Paul Fire & Marine Ins. Co.*, 2004 WI App 5, ¶ 11, 269 Wis. 2d 302, 674 N.W.2d 576. OI argues that is has no duty under negligence law to warn of the dangers of using the Kaylo asbestos products it manufactured because Roddis and Weyerhauser knew or should have known about the hazards of exposure to excessive asbestos dust. OI therefore argues that Sydow's employers were "sophisticated users" of OI's Kaylo asbestos products, relying primarily on *Mohr, Shawver v. Roberts Corp.*, 90 Wis. 2d 672, 280 N.W.2d 226 (Wis. 1979) and *Haase v. Badger Mining Corporation*, 2003 WI App 192, 266 Wis.2d 970, 669 N.W.2d 737, *affirmed* 2004 WI 97, 274 Wis.2d 143.

1. Legal Standard

For applicability of the sophisticated user defense, the Defendant must prove it reasonably relied on the user having knowledge of the dangerousness of the products at the time it supplied the product. *See Mohr*, 2004 WI App 5, ¶ 20 ("We first observe that the issue . . ., correctly framed, is whether KDI had reason to believe that the high school had knowledge the platforms were likely to be dangerous if used in less than five feet of water, not whether the high school actually did have that knowledge.").

The evidence required to prove a sophisticated user defense is discussed in *Haase*, 2003 WI App 192. In *Haase* the court ruled the Neenah Foundry employing the victim in a silicosis case was a sophisticated user. *Id.* at ¶ 24. The court cited evidence including:

8

> - testimony of two former Neenah safety directors stating that "Neenah was well aware of the hazards attendant to the industry"
> - participation and attendance in industry trade organizations which provided "literature about foundry hazards and worker protection"
> - Neenah was "technologically advanced"
> - "Neenah devoted significant amounts of time towards keeping abreast of":
>   - industry safety standards and changes in government regulations"
>   - ventilation and dust control systems in the foundry
>   - respiratory protective equipment including air fed helmets and high efficiency filter respirators
>   - training employees to recognize hazards and protect themselves
>   - medical monitoring of exposed employees

*Id.* at ¶ 24.  The court concluded from such evidence that Badger Mining, the supplier of the silica sand, could reasonably rely on Neenah implementing the safety precautions necessary to protect its own employees.  *Id*. at ¶ 24.

   2. Sophistication of Roddis/Weyerhauser and reliance by OI

The evidence regarding the sophistication of Sydow's employers does not approach the level of sophistication of Neenah.  Knowledge that a product may be dangerous does not equate to being a "sophisticated" user.  A sophisticated user must know how to protect its employees and know how to implement such protections.

First, OI incorrectly argues that any employer who has knowledge becomes a sophisticated user as a matter of law.  OI cites no Wisconsin decision where knowledge alone establishes this defense.  What an employer should have known or knows about potential dangers does not prove it possesses the level of sophistication needed to protect employees.  If the defense can be proved based only on what an employer knows or should know, the term "sophisticated" user is meaningless.  The defense requires an employer have the ability and skill to use protective measures against the dangers that are known and to have implemented such measures.

9

Second, OI has failed to produce any facts to show OI's knowledge of and reliance on Roddis/Weyerhaeuser's knowledge of danger or implementation of safety precautions. Defendant cites no evidence that Sydow's employers had a professional safety staff to protect the employees. Sydow himself did not use breathing protection for asbestos until the late 60's to early 70's - after he had suffered many years of exposure. Roddis'/Weyerhaeuser's failure to instruct employees such as Sydow to use breathing protection which protected from asbestos is evidence from which a jury could reasonably infer Roddis'/Weyerhaeuser's lack of sophistication and knowledge of the dangers of asbestos.

The failure of Sydow's employers to even attempt to implement asbestos safety precautions creates the inference they were not sophisticated enough to understand or appreciate the dangers of asbestos to protect their own employees. Frank Parker, Plaintiff's industrial hygienist expert, opined that airborne concentrations in the workplace exceeded exposure limits at the fire door plant between World War II and the 1970's because "engineering controls [dust collection system] were either not in place or not designed to prevent escape of micron sized particles." (Ex.9 at 33-34.) The evidence shows that Sydow's employers did not protect its employees from airborne asbestos exposures. The inference in Plaintiff's favor is that Roddis/Weyerhaeuser did not protect because they were unsophisticated about how to protect.

OI has failed to produce any facts to show (1) any precautions taken by any of Sydow's employers, (2) the knowledge of any of Sydow's employers. The evidence now cited by lawyers representing OI does not include any evidence to show that employees of defendant in the 1950s, 60s, or 70s, themselves knew the sophistication or knowledge of Sydow's employers at that time to establish the absence of any disputed issue of material fact about the element of reliance in the earlier time frames.

10

OI's argument about the Wisconsin Industrial Commission regulations and the safe place statute does not establish that Sydow's employers are transformed into sophisticated users. To adopt OI's position would be to find as a matter of law that *all* Wisconsin employers are sophisticated users of asbestos; sophisticated users of any of the more than 100 other gases, fumes, or dusts in the regulations; sophisticated users of any products containing or generating any of the more than 100 gases, fumes, or dusts in the regulations; as well as sophisticated users of any other potentially dangerous product, piece of equipment, or other item covered by the safe place statute. Additionally, these regulations were not intended to protect against the development of cancers which can occur at much lower levels of exposure than what was in the early regulations for asbestos. (Ex.13 at ¶ 111, 112, 113, 101-120.)

Further, OI did nothing to educate Roddis/Weyerhaeuser of the health hazards of its asbestos Kaylo products. Despite testing on OI Kaylo in the 1940s indicating it "must be regarded as a potentially hazardous material", OI continued to market Kaylo as "non-toxic" and did not provide any warnings concerning the health hazards. (Ex.10; Ex.11; Ex.12). In both *Haase* and *Mohr*, the supplier actually provided warnings to the users of the products. *Haase*, 2003 WI App 192 at ¶ 7; *Mohr*, 2004 WI App 5 at ¶ 3. In *Haase*, Badger supplied warnings concerning health hazards and instructed on how its product could be used safely in light of the hazards. *Haase*, 2003 WI App 192 at ¶ 7. The foundry was aware of Badger's warnings but chose not to rely on them. *Haase*, 2003 WI App 192 at ¶ 10-11.

3. OI denies knowledge of dangers from Kaylo and cannot rely on others knowing of the dangers

OI cannot logically argue that the dangers of Kaylo were unknown to OI and simultaneously contend OI relied on Sydow's employers having knowledge Kaylo was

dangerous. These are exactly the inconsistent positions OI is taking in its motion asserting Sydow's employers were sophisticated users of its Kaylo.

Plaintiff alleged that:

> "Defendant O-I knew or in the exercise of ordinary or reasonable care ought to have known asbestos causes serious and fatal disease. O-I had knowledge in the 1940s and 1950s that asbestos was harmful and caused disease. O-I was a manufacturer and vender of asbestos products, beginning in the 1940s and continuing through the 1950s. O-I had participated in scientific experiments that resulted in literature concerning the harmful effects of asbestos as early as the 1940s."

(Ex.1 at ¶64.) OI denied the above allegations. (Ex.2 at ¶¶ 59-64.) OI also argued that "evidence shows that, based on the state of art in the 1940s and 1950s, Owens-Illinois reasonably believed that users of Owens-Illinois Kaylo were not at risk of developing asbestos-related illnesses." (Ex.17 at 22.) For the affirmative defense of "sophisticated user", OI must demonstrate it relied on users' knowledge of the health hazards of OI Kaylo. OI's contradictory positions demonstrate its failure to meet its burden on summary judgment to show there is no issue of material fact.

4. Strict Liability Argument

The sophisticated user doctrine is not a defense to strict product liability claims in Wisconsin. *Mohr*, 2004 WI App. 5 at ¶ 34. ("While we have acknowledged the difficulty of distinguishing between a negligence claim and a strict product liability claim when both are based on an allegedly inadequate warning, . . . we are reluctant, without more guidance from the supreme court, to import doctrines from the former into the latter."). In *Mohr*, the court declined to apply the sophisticated user doctrine to analysis of a strict products liability claim under Restatement (Second) of Torts, § 402A.

D. Same Trade

OI cites to the case of *Shawver v. Roberts Corp.*, 90 Wis. 2d 672, 685-686 (1979). OI argues Shawver holds no legal duty is owed to employees of companies in the same "trade or profession." Here, OI argues they have no duty because Sydow's employers are part of the asbestos industry. *Shawver* does not establish such a broad sweeping rule about liability of a manufacturer to employees of other companies in the same industry. The Court's reference to not warning companies in the same industry was in the context of facts which established the defendant conveyor system manufacturer (Roberts Corp) had no duty to warn a contractor (Beloit Corp) which designed and installed a component part control system added in the field. The defective control system was found to be the cause of the injury to an employee of the buyer. *Id*. at 684-86. The control system was installed in the field by a contractor which the court noted had its own engineering department that incorporated safety features into the control system designs. *Id.* The conveyor system itself was not defective. *Id.* The court found the manufacturer did not recommend, manufacture, or install the control system. *Id.* Evidence also showed the contractor was responsible to furnish the control system such that the conveyor system would not reach the users in the original condition. *Id.*

Given these facts, *Shawver* is limited to situations where companies in an industry both have sophisticated engineering and safety staffs and the "dangers are generally known to that trade or profession." *Id.* at 686. The court in *Shawver* also recognized that on other fact patterns "[t]he duty to warn may extend to employees of an industrial purchaser of equipment." *Id*. Since defendants here fail to establish the absence of a factual dispute about whether

Sorenson's employers were sophisticated enough to protect him against the dangers of asbestos, the *Shawver* fact pattern is not applicable.

Milwaukee Circuit Court judges have denied summary judgment in asbestos cases based on the "same trade" defense, finding that there are issues of fact and even "the mere fact [another user] worked in the [same] trade [as defendants] does not establish him as a sophisticated user as a matter of law." (Ex.18 at 33.) (excerpt from summary judgment hearing transcript 11/13/06 (Hon. Patricia D. McMahon), *Scheible v. American Standard, Inc., et al.*, Milwaukee County Case No. 05-CV-3712, (finding dispute of fact and "mere fact [the plaintiff] worked in the insulation trade does not establish him as a sophisticated user as a matter of law."); (Ex.6 at 48-49.) (excerpt from summary judgment hearing transcript 03/10/08 (Hon. Michael B. Brennan), *Winnemueller, et al., v. Building Services Industrial Sales Co., et al.*, Milwaukee County Case No. 06-CV-486, finding "best argument is that the medical department conducted an asbestos screening program. However, again there's no evidence in the record that this screening program occurred in the 50's, 60's, or even early 70's....").

E. Punitive Damages

OI argues plaintiff cannot prove OI acted maliciously and OI reasonably believed users of Kaylo were not at risk of developing asbestos-related illness. The evidence concerning OI's intent is discussed below.

By the 1940s, OI had actual knowledge of the dangers of asbestos and its Kaylo products based on the studies it commissioned by the Saranac Laboratory. (Ex.14.) Despite this knowledge, OI chose not to issue warnings about the dangers of Kaylo, sponsored the publication of literature stating Kaylo was not toxic, and placed advertising stating Kaylo was

14

non-toxic. The combination of evidence that OI knew the dangers of Kaylo, chose not to warn, and portrayed the product as safe to potential purchasers presents a jury issue at the summary judgment stage.

Wisconsin trial judges have denied OI's motion for summary judgment on the punitive damages claim. For example in *Klessig v. Allied Supply Co. Inc., et al.*, Kewaunee County Case No. 08-CV-56, the court stated:

> Plaintiffs counter this argument [punitive damages] by asserting that Owens Illinois predecessor had knowledge that Kaylo was, quote unquote, a first class hazard, quote unquote potentially dangerous, and should be, quote unquote, handled as a hazardous dust. See Exhibits E, H, and J attached to Attorney Rakauski's affidavit. Plaintiffs assert that Owens Illinois was told that every precaution should be taken to minimize exposure to Kaylo dust of industrial employees. See Exhibit L attached to Attorney Rakauski's affidavit. Plaintiffs assert that on at least three occasions Owens Illinois was told to take precautionary measures to protect workes from dust created from Kaylo. See Exhibits F, L and N attached to Attorney Rakauski's affidavit. Plaintiffs assert no such precautionary measures were taken, despite these warnings.
> Plaintiffs further argue that Owens Illinois actually evaded providing information about Kaylo. See Exhibit P attached to Attorney Rakauski's affidavit. Exhibit P is a memorandum indicating that no brochure was prepared to address the health aspects of Kaylo dust and indicating why such brochure was not being prepared. This Court understands that competing inferences can be drawn from many of these exhibit documents cited by the plaintiffs. However, intent to disregard Mr. Klessig's rights required to establish a prima facie case for punitive damages can arguably be inferred from all the facts and circumstances in this case.

(Ex.8 at 40-41.)

The Wisconsin Supreme Court has held that:

> In a products liability case, a manufacturer may be found to have acted in reckless disregard if, after having gained specific knowledge of a products defect and its potential harm, the manufacturer fails to take some action that the defect demands, such as adequate testing procedures, effective quality control, sufficient warnings, or adequate remedial procedures such as product recalls or post-sale warnings.

*Sharp v. Case Corp.*, 227 Wis.2d 1, 23, 595 N.W.2d 380 (1999). *See also* Wis. Stat. 895.043 (punitive damages can be awarded where "the defendant acted maliciously toward the plaintiff or in an intentional disregard of the rights of the plaintiff.")

An illustrative case is *Wangen v. Ford Motor Co.*, 97 Wis.2d 260, 309, 294 N.W.2d 437, 462 (Wis. 1980). In *Wangen* the Wisconsin Supreme Court held punitive damages claims were permissible in a products liability case where the plaintiff alleged the defendant knew of the defects in the design of its product based on testing it had conducted and where the defendant deliberately chose not to issue warnings. The court in *Wangen* cited the important purpose of punitive damages in punishing and deterring particularly egregious misconduct. *Wangen*, 97 Wis.2d at 302-303.

OI's failure to reveal to users the results of Saranac reports before or while manufacturing Kaylo in the 1940s and 1950s is grounds for inferring intent or reckless disregard in hiding the dangers of asbestos from users of Kaylo. By 1960 - only 2 years after OI stopped manufacturing Kaylo, the scientific literature established the dangers of asbestos to bystanders. (Ex.15 at ¶94.) Despite the recognized duty to warn after selling a product, OI did nothing. The question is what was the motive of OI when it chose not to hire consultants to do more testing or study of the hazards besides a few rat studies. OI had the resources of a medical director and skilled industrial hygienist, but did not do testing on the exposures from cutting and sawing Kaylo or the occupational risks of asbestos. In the absence of an adequate scientific study about Kaylo and by touting Kaylo as non-toxic in advertisements, a jury could find OI was misleading the users of Kaylo and putting their lives at risk.

IV. CONCLUSION

For the reasons above, this Court should deny OI's motion for summary judgment.

Dated: June 15, 2015

<u>s/ Robert G. McCoy</u>
Attorney for Plaintiff

Robert G. McCoy
Cascino Vaughan Law Offices, Ltd.
220 South Ashland Avenue
Chicago, Illinois 60607
(312) 944-0600
(312) 944-1870 (fax)
bmccoy@cvlo.com